UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-24861-CIV-SCOLA/MCALILEY

ZONYA A. FLEMINGS,

     Plaintiff,

vs.

U.S. SECURITY ASSOCIATES,
*et al.*, INC.,

     Defendant.

_____/

**REPORT AND RECOMMENDATION ON**
**EMPLOYER DEFENDANTS' MOTION TO DISMISS**

Pending before the Court is a Motion to Dismiss Plaintiff's Fourth Amended Complaint filed by Defendants U.S. Security Associates, Inc. ("USSA"), Miami-Dade County, Florida Department of Transportation and Public Water/Safety and Security Department (the "County") and Pablo Castillo (together, the "Employer Defendants"), which the Honorable Robert N. Scola Jr. referred to me. (ECF Nos. 40, 75). The Motion is fully briefed. (ECF Nos. 76, 80, 95, 96).[1] I have carefully reviewed the parties' legal memoranda and the applicable law, and for the reasons set forth below I recommend that the Court grant the Motion to Dismiss.

---

[1] Plaintiff impermissibly filed a sur-reply without first obtaining leave of court. (ECF No. 95). The Employer Defendants responded with a "Supplemental Reply," (ECF No. 96), also without authorization. Although the Court could disregard these unauthorized memoranda, given my recommendation that the Court grant the Motion to Dismiss, I chose to read and consider all filings.

## I.      BACKGROUND

Plaintiff claims that her employers discriminated against her because of her race and sex and retaliated against her. Unfortunately, the basis of Plaintiff's claims is difficult to discern. The Fourth Amended Complaint ("FAC") is exceedingly long (nearly 90 pages and more than 500 paragraphs), which is entirely unnecessary to properly plead the claims. Plaintiff pleads a separate count for each instance of alleged discrimination or retaliation, that is, 15 counts against the Employer Defendants, ten (10) of which are based on Title VII alone. (ECF No. 71). The FAC also includes many seemingly irrelevant, inconsistent, conclusory and redundant allegations, which make it difficult to make sense of Plaintiff's claims. Here, the Court sets forth only those factual allegations that appear relevant to the Motion to Dismiss and, at this juncture, the Court assumes those factual allegations are true. *Quality Foods de Centro America S.A. v. Latin American Agribusiness Dev. Corp. S.A.,* 711 F.2d 989, 994-95 (11th Cir. 1983) (when considering whether to grant a motion to dismiss, the court must assume the facts alleged are true and cast them in the light most favorable to the non-moving party).

The Court has reviewed the FAC with Plaintiff's unrepresented status in mind. Specifically, the Court has carefully and repeatedly read the FAC to identify factual allegations which, if taken together and as true, would allow the Court to draw the reasonable inference that Defendants are liable for the misconduct alleged. In the end, the Court concludes that the FAC lacks critical factual allegations needed to plead the elements of Plaintiff's claims.

A.    **Plaintiff's Employment**

Plaintiff is a Black female who USSA and the County jointly employed from July 2016 through January 12, 2018. (ECF No. 71 at ¶¶ 17, 31). Plaintiff alleges that at the time the discrimination and retaliation began, she was a "sector supervisor" of the "910 Sector" of the Metrorail system, which includes the Dadeland North station. (*Id*. at ¶¶ 80-81). As part of her duties, Plaintiff supervised certain employees who had a personal friendship with Defendant Castillo, including two Hispanic males, "PPO Garcia" and "PPO E. Freytes." (*Id*. at ¶¶ 104-05, 111, 113). In early January 2017, another subordinate of Plaintiff, "PPO A. Breton," reported "to Defendant USSA and later to Plaintiff" that Garcia and Freytes were negligent in performing their duties. (*Id*. at ¶ 107). On an unspecified date, Plaintiff "refused to allow or to participate in retaliatory actions" against Breton for reporting the January incident. (*Id*. at ¶ 123). Plaintiff does not provide any factual support for this allegation, such as whether she was instructed to retaliate against Breton and by whom, what the retaliatory actions were, and how Plaintiff responded to any instructions.

Plaintiff also alleges that another subordinate, "PPO Gabriel," reported to Plaintiff that Freytes engaged in misconduct against an unarmed Black patron. (*Id*. at ¶ 124). Plaintiff communicated Gabriel's report to an unidentified individual at USSA on or around January 29, 2017. (*Id*. at ¶ 125). Castillo then instructed unidentified USSA employees to retaliate against Gabriel, but Plaintiff "refused to allow or participate in retaliatory actions...." (*Id*. at ¶¶ 130-31). Again, Plaintiff does not allege whether she was instructed to retaliate against Gabriel and, if so, by whom, and what retaliatory actions she refused to take.

Shortly thereafter, on February 13, 2017, Plaintiff issued a written reprimand to

3

Freytes for "Disobeying an Order, Dereliction of Duties, Abandonment of Post, etc." and submitted the reprimand "to a part of Defendant USSA's Management team." (*Id*. at ¶ 132).

### A.    The Broken Golf Cart

One week after reprimanding Freytes, between February 20-23, 2017, USSA, at the direction of the County, reassigned Plaintiff, from the "lead parking garage position" to the "secondary officer in the garage." (*Id*. at ¶¶ 154-57, 161, 165, 168-69, 173-74). The only alleged difference between these positions is that the lead position utilizes a vehicle, while the secondary officer utilizes a golf cart. (*Id*. at ¶ 155).

Plaintiff alleges that at the time of the reassignment, USSA and the County were aware that the golf cart was not operational, and they assigned her to the secondary officer position "to prevent a Hispanic male from being made to walk his post while the golf cart was non-operational." (*Id*. at ¶¶ 158-59, 166-67, 170-71, 175-76, 182-83). Plaintiff also alleges that USSA and the County reassigned her because she refused to retaliate against Breton and Gabriel, and because she issued Freytes a written reprimand. (*Id*. at ¶¶ 228, 230-31, 235-238). Although Plaintiff alleges that a Hispanic male replaced her in the lead parking garage position, she does not identify him. (*Id*. at ¶¶ 156, 161, 168, 173). As a result of the reassignment, Plaintiff worked her six (6) or twelve (12) hour shifts on foot in the two-story garage, which caused her physical and emotional stress. (*Id*. at ¶¶ 160, 172, 177, 190-91, 232-33).

### B.    The Infested Vehicle

On February 24, 2017, Plaintiff filed a charge of employment discrimination ("Charge") with the Equal Employment Opportunity Commission ("EEOC") against the

County and Castillo. (*Id*. at ¶ 39). The FAC contains contradictory allegations concerning when and how the Employer Defendants learned of the Charge. Plaintiff alleges that on the day she filed the Charge, the County learned of it and notified USSA, but she also alleges the opposite:  that USSA learned of the Charge and notified the County. (*Id*. at ¶¶ 250-53). To add further confusion, Plaintiff alleges that the Employer Defendants became aware of the Charge later – on March 1, 2017 – for a different reason: because an EEOC employee, Linda Byars, notified them of the Charge. (*Id*. at ¶¶ 39-45).

Plaintiff asserts that on February 28, 2017, USSA, at the direction of the County, "switched out Plaintiff's duty vehicle to a vehicle that was known to be infested with roaches" which forced Plaintiff to work her shift on foot. (*Id*. at ¶¶ 254-56). Plaintiff alleges that the County and USSA took this action because Plaintiff filed the Charge against the County and Castillo. (*Id*. at ¶ 261).

### C.   **Permanent Reassignment**

On March 2, 2017, Plaintiff filed a charge of employment discrimination with the EEOC against USSA. (*Id*. at ¶ 46). The Employer Defendants became aware of this Charge by March 7, 2017, at which time USSA, at the direction of the County, permanently reassigned Plaintiff to a "special duty assignment." (*Id*. at ¶¶ 47-52, 275-77). Plaintiff's new post "included driving approximately 8 miles (one-way) on sidewalks and under a portion of the Miami-Dade Metrorail System" and that pedestrians "frequently utilized the places where Plaintiff was ordered to drive on." (*Id*. at ¶¶ 319-21). Plaintiff does not otherwise identify her new "special duty" assignment or state what relevant differences if any, such as differences in pay or benefits, existed between her original position and her reassignment.

According to Plaintiff, the County and USSA permanently reassigned her because she is a Black female and did so in retaliation for her filing the two Charges. (*Id*. at ¶¶ 285, 329-30). Although Plaintiff alleges that "USSA gave [her] original post assignment to a Hispanic male," (*id*. at ¶ 276), she does not identify that individual. Plaintiff alleges that as a result of the reassignment, she suffered mental and emotional stress from diminished reputation, "loss of friends/acquaintances" and "constant ridicule directed to her from her former co-workers." (*Id*. at ¶¶ 290-92, 336-38).

### D.    Additional Complaints and Alleged Constructive Discharge

On March 23, 2017, Plaintiff made a complaint on USSA's employee hotline, but she does not identify the nature of the complaint. (*Id*. at ¶ 361). Several weeks later, at the end of April 2017, USSA revoked Plaintiff's annual leave benefits, and required her to take unpaid leave when away from work, which made it difficult for Plaintiff to spend time with her terminally ill father. (*Id*. at ¶¶ 344, 346, 356, 358, 360). Plaintiff alleges that USSA did so because it "dislikes Black females" and allowed unidentified Hispanic males to take paid leave "in lieu of their time off", without explaining what this means. (*Id*. at ¶¶ 349-50). Plaintiff also alleges that USSA revoked her annual leave because she made a complaint on USSA's employee hotline. (*Id*. at ¶ 361).

In May and July 2017, Plaintiff filed additional charges of discrimination with the EEOC against USSA and the County. (*Id*. at ¶ 373). USSA and the County learned of these additional Charges by the end of July 2017. (*Id*. at ¶¶ 65-67). On August 8, 2017, Plaintiff attended a mandatory training class on her day off, for which USSA did not pay her. (*Id*. at ¶¶ 367-71). According to Plaintiff, USSA refused to compensate Plaintiff for the training

class, in retaliation for her filing the May and July Charges. (*Id*. at ¶¶ 373, 390).

At the end of September 2017, Plaintiff "successfully added" USSA to an earlier EEOC Charge against the County, shortly after which she went on six weeks of unpaid leave. (*Id*. at ¶ 396). Plaintiff returned to work on November 28, 2017. (*Id*. at ¶ 397). A few days later, on December 3, 2017, and for several weeks thereafter, USSA provided Plaintiff with defective vehicles. (*Id*. at ¶ 398). Specifically, she was assigned vehicles that: (i) had a single operational headlight, (ii) operated with a spare tire as the driver's side rear tire, (iii) broke down on the highway while Plaintiff was driving it, and (iv) one that was infested with roaches. (*Id*.). Although the FAC is not clear, it seems to allege that USSA assigned her these defective vehicles in retaliation for Plaintiff adding it to an EEOC complaint against the County. (*Id*. at ¶¶ 402-04). Plaintiff submitted a letter of resignation on December 26, 2017 and contends that she was constructively discharged on January 12, 2018. (*Id*. at ¶¶ 400-01). Plaintiff does not explain how it is that she was constructively discharged a few weeks *after* she submitted her letter of resignation.

### E.     This Lawsuit

Plaintiff initially filed suit against USSA only, in Florida Circuit Court. The lawsuit alleged that USSA discriminated against Plaintiff because of her race and sex, and USSA removed the action to this Court. (ECF No. 1). Before USSA responded to the complaint, Plaintiff filed an amended complaint which added the County and certain EEOC employees as defendants, and added claims for civil conspiracy, retaliation, a *Bivens*[2] claim and a claim

---

[2] *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

under 42 U.S.C. § 1983. (ECF No. 21). Before defendants responded, Plaintiff again amended her complaint. (ECF Nos. 34, 42). The Employer Defendants filed a motion to dismiss the second amended complaint but while it was pending, Plaintiff obtained leave, without opposition, to file a third amended complaint. (ECF Nos. 43, 49, 51-54, 57). The Employer Defendants filed a motion to dismiss but again, while the motion was pending, Plaintiff obtained leave, without opposition, to file a fourth amended complaint. (ECF Nos. 62, 68, 69). Plaintiff requested leave to amend "in order to provide more definite statements" and to "conform to Rules 8 and 10(b)" as the Employer Defendants had requested in their motions to dismiss. (ECF Nos. 49, 68).

The Motion to Dismiss now before the Court addresses the Fourth Amended Complaint. The FAC asserts claims against the Employer Defendants for sex and race discrimination, and retaliation, under Title VII of the Civil Rights Act of 1964, civil conspiracy and, as against Castillo, violation of 42 U.S.C. § 1983 for violating Plaintiff's rights under Title VII, the Florida Civil Rights Act of 1992 and Florida's Whistleblower Act. (ECF No. 71). In their Motion to Dismiss the Employer Defendants argue that Plaintiff fails to state a claim upon which relief may be granted because she:

> (i) fails to allege enough facts to show that she suffered an adverse employment action;

> (ii) fails to allege that she engaged in protected activity;

> (iii) cannot state a claim for discrimination or retaliation based upon failure to compensate her for attending a training class because of *res judicata;*

> (iv) fails to adequately allege a claim for constructive discharge;

> (v) cannot state a claim for civil conspiracy because of the intracorporate

8

conspiracy doctrine, and her claim rests upon vague and conclusory allegations, and

(vi) fails to allege that Castillo acted under color of law as required for a § 1983 claim.

(ECF No. 75).

Plaintiff filed a response, which she titled "Motion to Strike", which addressed only that portion of the motion to dismiss directed to Count VII of the FAC. (ECF No. 76). Plaintiff later, without leave of court, filed another response that does not meaningfully respond to the Employer Defendants' arguments. (ECF No. 95). Instead it largely repeats allegations from the FAC or, in some instances, includes new ones, and in a conclusory fashion denies that dismissal is warranted. (*Id.*).

## II.    ANALYSIS

### A.    <u>Legal Standard</u>

To survive a motion to dismiss, the plaintiff must plead facts that make out a claim that is plausible on its face and raises the right to relief beyond a speculative level. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). When considering a motion to dismiss, the court must draw "all reasonable inferences" in favor of the plaintiff. *St. George v. Pinellas Cty*, 285 F.3d 1334, 1337 (11th Cir. 2002). However, "naked assertions devoid of further factual enhancement" or "[t]hreadbare recitals of the elements of a cause of action, supported by

mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678 (quotation marks omitted).

The Court has liberally construed Plaintiff's claims. *Hughes v. Lott*, 350 F.3d 1157, 1160 (11th Cir. 2003) ("*pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and, will, therefore be liberally construed") (citation omitted). Plaintiff's *pro se* status, however, does not relieve Plaintiff of her obligation to satisfy the basic pleading requirements of applicable law and the Federal Rules of Civil Procedure. *See DZB ANK AG Deutsche Zentral-Genossenschaftsbank, Frankfurt AM Main, New York Branch v. Lisa Francisque Insurance Agency, LLC*, No. 10-cv-20731, 2010 WL 11597969 at *2 (S.D. Fla. July 28, 2010); *Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989); *GJR Invs., Inc. v. County of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998), *overruled on other grounds as recognized in Randall v. Scott*, 610 F.3d 701, 706 (11th Cir. 2010) (the leniency courts show to *pro se* litigants "does not give a court license to serve as de facto counsel for a party … or to rewrite an otherwise deficient pleading in order to sustain an action.").

### B.   Plaintiff Fails to State a Claim Under Title VII for Sex or Race Discrimination

Title VII makes it unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his [or her] compensation, terms, conditions or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). A plaintiff may plead discrimination under either a theory of disparate treatment or disparate impact. *Mitchell v.*

*Jefferson County Bd. of Educ.*, 936 F.2d 539, 546 (11th Cir. 1991). The FAC alleges that the Employer Defendants treated Plaintiff less favorably than others because she is a Black female and, thus, Plaintiff proceeds under a disparate treatment theory.

To state a claim for disparate treatment under Title VII, the plaintiff must allege that she: "(1) is a member of a protected class; (2) was qualified for the position; (3) suffered an adverse employment action; and (4) was treated less favorably than a similarly situated-individual outside her protected class." *Arafat v. School Bd. of Broward County*, 549 Fed. App'x 872, 874 (11th Cir. 2013) (citation omitted). Plaintiff fails to sufficiently allege the third (adverse action) and fourth (similarly situated individual) elements, which are necessary to state a disparate treatment claim.

1.   Adverse Action

"[A]n adverse employment action is a crucial component in any discrimination claim under Title VII because without it, Title VII offers no remedy." *Hyde v. K.B. Home, Inc.*, 355 Fed. App'x 266, 269 (11th Cir. 2009) (citation omitted). To demonstrate an adverse employment action, a plaintiff "must show a *serious and material* change in the terms, conditions or privileges of employment." *Hyde*, 355 Fed. App'x at 269 (citation omitted) (emphasis in original). Generally, an adverse employment action involves a "significant change in employment status such as hiring, firing, failing to promote, reassignment with significantly different responsibilities or a decision causing a significant change in benefits." *Webb-Edwards v. Orange County Sheriff's Office*, 525 F.3d 1013, 1031 (11th Cir. 2008) (citation omitted). "[N]ot everything that makes an employee unhappy is an actionable adverse action." *Doe v. DeKalb County Sch. Dist.*, 145 F.3d 1441, 1449 (11th

11

Cir. 1998) (citation omitted). This must be viewed objectively: "the employee's subjective view of the significance and adversity of the employer's action is not controlling; the employment action must be materially adverse as viewed by a reasonable person in the circumstances." *Hyde*, 355 Fed. App'x at 269.

Plaintiff alleges that the Employer Defendants took the following actions because she is a Black woman: (1) temporarily reassigned Plaintiff (for three days) to a secondary garage officer position where she was given a broken golf cart, which required her to work her shift on foot, (2) permanently reassigned Plaintiff to a "special duty assignment"[3] and (3) with respect to USSA only, revoked her annual leave benefits. (ECF No. 71 at ¶¶ 154-57, 161, 165, 168-69, 173-74, 275-77, 344, 350, 356). Plaintiff has not sufficiently alleged that any of this conduct amounts to actionable adverse employment actions.

### a.     Temporary Reassignment

Regarding Plaintiff's temporary reassignment, the only alleged difference between Plaintiff's original position, and the secondary officer position that she was reassigned to, is the mode of transportation: a vehicle versus a broken golf cart. This does not constitute a

---

[3] Count IV includes the conclusory allegation that "[o]n Jan. 12, 2018, Plaintiff was constructively discharged." (ECF No. 71 at ¶ 284). "A plaintiff bringing a claim of constructive discharge bears a very high burden." *Wells v. Orange County School Bd.*, No. 6:05-cv-479-Orl-28DAB, 2007 WL 9719341 at *12 (M.D. Fla. Feb. 16, 2007) (citation omitted). "Constructive discharge occurs when an employer deliberately makes an employee's working conditions intolerable and thereby forces him to quit his job." *Bryant v. Jones*, 575 F.3d 1281, 1298 (11th Cir. 2009) (citations omitted). Although the FAC has many allegations, it does not identify the working conditions that Plaintiff contends "were so unbearable that a reasonable person in [Plaintiff's] position would be compelled to resign." *Virgo v. Riviera Beach Assocs.*, 30 F.3d 1350, 1363 (11th Cir. 1994). To the extent Plaintiff alleges that her "special duty assignment" amounts to a constructive discharge, for the same reasons why that reassignment does not amount to an adverse action (as explained in this subsection), that special duty assignment does not support a claim for constructive discharge.

significant change in the terms, conditions or privileges of employment. This is because "a change in work assignments, without any tangible harm is outside the protection of Title VII's anti-discrimination clause, especially where the work assignment at issue is only by definition temporary and does not affect the employee's permanent job title or classification." *Hyde*, 355 Fed. App'x at 269 (citing *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1245 (11th Cir. 2001) (*overruled on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006)). The FAC does not allege that Plaintiff's temporary reassignment affected her job title or classification, or that her responsibilities or compensation were reduced during the brief period she acted as a secondary garage officer. Although "proof of direct economic consequences is not required," an adverse employment action "must impact the terms, conditions or privileges of the plaintiff's job in a real and demonstrable way." *Minnifield v. City of Birmingham Department of Police*, 791 Fed. App'x 86, 90 (11th Cir. 2019) (citation omitted). Viewed objectively, Plaintiff's temporary assignment to a position that required use of a broken golf cart did not impact the terms, conditions or privileges of her employment in a real and demonstrable way.

b.    Permanent Reassignment

The same is true regarding Plaintiff's alleged permanent reassignment. As an initial matter, Plaintiff does not identify her new position other than referring to it in vague terms as a "special duty assignment." She does not allege facts that plausibly suggest the permanent reassignment resulted in a decrease in pay, altered her job title or classification, or substantially reduced her responsibilities or prestige. *See Hyde*, 355 Fed. App'x at 269 (a

transfer to a different position can constitute an adverse employment action if it involves a reduction in "pay, prestige or responsibility'.") (citation omitted).

Plaintiff alleges only that her special duty assignment "included driving approximately 8 miles (one-way) on sidewalks and under a portion of the Miami-Dade Metrorail System" and that pedestrians "frequently utilized the places where Plaintiff was ordered to drive on." (ECF No. 71 at ¶¶ 319-21). In her Sur-Reply, Plaintiff adds that she "was constantly provided with defective radios, faulty vehicles [and] people were regularly planted in Plaintiff's line of duty to cause friction with this Plaintiff" and she "didn't have arrest authority." (ECF No. 95 at 7, 12). These facts are not included in the FAC, and "plaintiffs cannot amend their complaint through a response to a motion to dismiss." *Burgess v. Religious Technology Center*, 600 Fed. App'x 657, 665 (11th Cir. 2015) (citation omitted). Even if the Court considered these allegations, taken together, it is not self-evident how the differences that Plaintiff identifies are, as an objective matter, "a *serious and material* change in the terms, conditions or privileges of employment." *Hyde*, 355 Fed. App'x at 269 (emphasis in original).

In short, Plaintiff fails to identify any legally significant differences between her prior "lead parking garage" position and her "special duty" assignment. The differences that Plaintiff does identify are more objectively viewed as a "*de minimis* inconvenience or alteration of responsibilities", which is not an adverse employment action within the meaning of Title VII. *Doe*, 145 F.3d at 1453.

c.      Annual Leave

Last, Plaintiff alleges that USSA "revoked her annual leave benefits" because it "dislike[s] Black females." (ECF No. 71 at ¶ 350). This is a conclusory allegation. Plaintiff does not allege facts that would support the conclusion, such as USSA's leave policy, the details of Plaintiff's leave request(s), the amount of leave Plaintiff had remaining at the time of her request(s) and USSA's response. Without more, the Court cannot conclude that the FAC plausibly suggests that USSA denied Plaintiff annual leave benefits because of race and/or gender discrimination.[4]

For the foregoing reasons, the Court concludes that Plaintiff has not sufficiently alleged that the Employer Defendants took any actionable adverse action against her.

2.    Similarly Situated Individual

The FAC also lacks sufficient allegations to satisfy the fourth element of a disparate treatment claim, that Plaintiff was treated less favorably than a similarly situated individual outside her protected class. To satisfy the fourth element, "the plaintiff must show that she and the other employee were similarly situated in 'all relevant respects'." *Arafat*, 549 Fed. App'x at 874. This requires a plaintiff to show that the comparator "is similarly situated in terms of conduct, performance, and qualifications, and that no differentiating or mitigating

---

[4] The Employer Defendants argue that the doctrine of *res judicata* bars Plaintiff's claim because she previously filed an administrative wage theft complaint for unpaid annual leave, and the hearing examiner found in USSA's favor. (ECF Nos. 75 at 9-10; 75-1; 75-2). I cannot agree. The Employer Defendants state the conclusion that the issues in the two proceedings are identical, (*Id*. at 10), without providing this Court with enough information for it to determine if this is so. The Court cannot assume that the elements of *res judicata* are satisfied and it need not reach the issue, given Plaintiff's failure to adequately allege that the revocation of her annual leave benefits constitutes an adverse employment action.

circumstances distinguish their situations." *Dawson v. Miami-Dade County*, No. 07-20126, 2008 WL 1924266 at *9 (S.D. Fla. March 11, 2008) (citation omitted).

Plaintiff alleges only that a "Hispanic male" replaced her and that the Employer Defendants treated "Hispanic males" more favorably. (ECF No. 71 at ¶¶ 156-57, 161, 168-69, 173, 182-83, 276, 349, 378). Such generic allegations are inadequate to state a disparate treatment claim. *See Arafat*, 549 Fed. App'x at 874 ("[Plaintiff] generically referenced younger males, but nowhere in her complaint does she identify any valid comparators to undergird her disparate treatment claims. Her allegations, therefore, do not plausibly suggest intentional discrimination, and her disparate treatment claims fails as a result."). In her Sur-Reply, Plaintiff identifies her alleged comparator as "PPO Mauri" who "is a Hispanic male." (ECF No. 95 at 9). Again, Plaintiff cannot amend her complaint with a Sur-Reply. And, if Plaintiff had included this assertion in the FAC, her claim would still fail. The problem with the FAC is not that Plaintiff failed to name her alleged comparator. The problem is that Plaintiff pleads no facts that plausibly suggest Plaintiff and her alleged compactor, whether PPO Mauri or someone else, were "similarly situated in all relevant respects." *Dawson*, 2008 WL 1924266 at *9.

For these reasons, the Court concludes that Plaintiff has failed to state a claim for sex or race discrimination and, I recommend that the Court dismiss Counts I, IV and VI without prejudice.

### C.    Plaintiff Fails to State a Claim Under Title VII for Retaliation

Title VII makes it unlawful for an employer to discriminate against an employee because she "has *opposed* any practice made an unlawful employment practice by [Title

VII].” 42 U.S.C. § 2000e-3(a) (emphasis added). This is known as the “opposition clause” and it “protects activity that occurs before the filing of a formal charge with the EEOC, such as submitting an internal complaint of discrimination to an employer, or informally complaining of discrimination to a supervisor.” *Muhammad v. Audio Visual Servs. Group*, 380 Fed. App’x 864, 872 (11th Cir. 2010). Title VII also makes it unlawful for an employer to retaliate against an employee because she “has made a charge, testified, assisted, or *participated* in any manner in an investigation, proceeding, or hearing under [Title VII].” 42 U.S.C. § 2000e-3(a) (emphasis added). This “participation clause protects proceedings and activities which occur in conjunction with or after the filing of a formal charge with the EEOC.” *Muhammad*, 380 Fed. App’x at 872.

Plaintiff alleges that the Employer Defendants’ retaliation is unlawful under both the opposition and participation clauses of Title VII. To state a claim under either clause, Plaintiff must satisfactorily plead that: “(1) she engaged in statutorily protected activity; (2) the employer took an adverse employment action against [her]; and (3) there is a causal connection between the protected activity and the adverse action.” *Hyde*, 355 Fed. App’x at 272-73 (citation omitted). Plaintiff alleges that she engaged in protected activity when she (i) “refused to allow or to participate in retaliatory actions” against her subordinates, PPOs Breton and Gabriel, (ii) provided “USSA’s Management Team” with a reprimand she wrote of PPO Freytes for “disobeying an order, dereliction of duties, abandonment of post, etc.,” (iii) made a complaint on USSA’s Employee Hotline, and (iv) filed EEOC charges against the Employer Defendants. (ECF No. 71 at ¶¶ 123, 131-32, 228, 230, 261, 329-330, 361, 373, 390-92, 396).

1.     <u>Plaintiff Fails to State a Claim Under the Opposition Clause</u>

The first three allegations, that Plaintiff refused to retaliate against PPOs Breton and Gabriel, complained about PPO Freytes and made a complaint on USSA's Employee Hotline do not constitute statutorily protected activity. With respect to PPOs Breton and Gabriel, there is no allegation that the Employer Defendants discriminated against them and thus, necessarily, no allegation that Plaintiff opposed the Employer Defendants' discriminatory conduct towards PPOs Breton and Gabriel. Plaintiff alleges that the Employer Defendants retaliated against PPOs Breton and Gabriel because they reported misconduct of other employees (PPOs Freytes and Garcia) who were "personal friends on & off duty" of Defendant Castillo. (ECF No. 71 at ¶¶ 111, 113). The FAC thus makes clear that the alleged mistreatment of PPOs Breton and Gabriel had nothing to do with Title VII. Similarly, Plaintiff states she issued a written reprimand to PPO Freytes and provided it to unidentified members of management, and that the Employer Defendants retaliated against Plaintiff because Castillo and Freytes were friends. (*Id.* at ¶¶ 113, 133-34). In short, Plaintiff has not plausibly alleged that the Employer Defendants retaliated against her for opposing an employment practice made unlawful under Title VII.[5]

With respect to Plaintiff's allegation that she made a complaint on USSA's Employee Hotline, the Court recognizes that "internal complaints of discrimination" constitute

---

[5] Plaintiff also fails to satisfy the second element of a retaliation claim, adverse action. Plaintiff alleges that the Employer Defendants retaliated against her by temporarily reassigning her to the secondary officer position. (ECF No. 71 at Count II). For the reasons already explained, Plaintiff's temporary reassignment does not constitute an adverse employment action.

protected activity under the opposition clause of Title VII's anti-retaliation provision. *Hyde*, 355 Fed. App'x at 272 (citation omitted). However, Plaintiff does not provide any supporting factual allegations about her complaint including, most fundamentally, what she complained about. Absent allegations demonstrating that Plaintiff's internal complaint concerned conduct prohibited by Title VII, the FAC fails to show that Plaintiff engaged in statutorily protected activity. *See Little v. United Technologies,* 103 F.3d 956, 960 (11th Cir.1997). (Plaintiff must show, under the opposition clause, that she "had a good faith, reasonable belief that the employer was engaged in unlawful employment practices.").

### 2. Plaintiff Fails to State a Claim Under the Participation Clause

Plaintiff alleges that the Employer Defendants did the following in retaliation for her filing EEOC charges against them: (i) provided Plaintiff with a roach infested vehicle for one day, (ii) permanently reassigned Plaintiff to a "special duty assignment," and (iii) failed to compensate Plaintiff for a 4 hour mandatory training class. (ECF No. 71 at Counts III, V, VIII and IX).[6]

The filing of a formal charge of discrimination with the EEOC is protected activity under Title VII's participation clause. 42 U.S.C. § 2000e-3(a); *see also EEOC v. Total System Services, Inc.*, 221 F.3d 1171, 1174 at n.2 (11th Cir. 2000). Plaintiff, however, has not sufficiently alleged a causal connection between her EEOC charges and the alleged

---

[6] Although Count VIII is labeled as a claim for race and gender discrimination, the Court reads it as an attempt to state a claim for retaliation, given Plaintiff's allegation that USSA refused to pay her for mandatory training "because they were retaliating against Plaintiff for filing another EEOC Complaint…." (ECF No. 71 at ¶ 373). This Count duplicates Count IX, which also claims that the failure to pay Plaintiff for her training class was retaliation.

retaliatory actions. To do this, Plaintiff must show that: (1) the decision maker knew of her protected activity; and (2) the protected activity and adverse action were not wholly unrelated. *Shannon v. BellSouth Telecomm., Inc.*, 292 F.3d 712, 716 (11th Cir. 2002). Importantly, "[d]iscrimination is about actual knowledge, and real intent, not constructive knowledge and assumed intent." *Walker v. Prudential Prop. & Cas. Ins. Co.*, 286 F.3d 1270, 1274 (11th Cir. 2002) (citation omitted).

Plaintiff has not identified the decisionmakers. Instead, she generally states that "Defendant MDC" or "Defendant USSA" retaliated against her. Similarly, Plaintiff only alleges generally that the County and USSA became aware of her EEOC charges, without identifying who within those entities learned of the EEOC charges and when. Having failed to allege facts demonstrating that the decision maker(s) knew of Plaintiff's protected activity at the time of the allegedly adverse employment actions, she has not plausibly stated a claim for retaliation. *See Krutzig v. Pulte Home Corp*., 602 F.3d 1231, 1235 (11th Cir. 2010) (no causal connection where "[t]here…is no evidence in the record to support a finding that [the decision makers] knew of any [protected activity] at the time the decision was made to terminate [the plaintiff's] employment."); *Ayanwale v. Alabama Dept. of Youth Services*, No. 2:12-cv-2191-AKK, 2014 WL 3809814 at *6-7 (N.D. Ala. July 30, 2014); *Patsalides v. City of Fort Pierce*, No. 15-14331-CIV-Graham, 2016 WL 7971186 at *11 (S.D. Fla. Dec. 5, 2016).

The Court also concludes that Plaintiff has not sufficiently alleged that she suffered an adverse employment action. For the reasons already explained, Plaintiff's allegations regarding her temporary assignment (for one day) of a roach infested vehicle, and her

permanent "special duty" reassignment, do not rise to the level of a serious and material change in her employment status. Plaintiff also alleges that USSA provided her with defective vehicles over a 3-week period. (ECF No. 71 at Count X).  However, Plaintiff fails to allege that USSA did so *because of* her EEOC charge, as is required to state a claim for retaliation. In her Sur-Reply, Plaintiff asks the Court to "**infer** the cause [and] affect [sic] in Count X….", (ECF No. 95 at 15), but the Court cannot read missing allegations into a complaint.

Even if Plaintiff alleged the necessary causal connection, her claim still fails because she has not alleged facts demonstrating that this was more than a *de minimis* inconvenience. For example, the FAC does not include any allegations regarding the fleet of vehicles, USSA's maintenance of those vehicles or the quality of vehicles Plaintiff and her colleagues typically received. Without additional factual context, Plaintiff has not plausibly alleged that USSA's provision of defective vehicles constitutes an actionable adverse employment action.[7, 8]

For the foregoing reasons, the Court concludes that Plaintiff has failed to state a claim for retaliation and, therefore, Counts II, III, V, VII, VIII, IX, and X should be dismissed.

---

[7] In Counts V and X, Plaintiff again includes the conclusory allegation that she was constructively discharged on January 12, 2018. (ECF No. 71 at ¶¶ 331, 401). This allegation suffers from the same deficiencies as explained *supra* at n. 3.

[8] As mentioned above, Plaintiff also alleges that the Employer Defendants retaliated against her by revoking her annual leave benefits. While this may, depending upon the facts of the case, constitute an adverse employment action, the Court need not address it because Plaintiff's retaliation claim fails for failure to allege a causal connection.

### D.     Plaintiff Fails to State a Claim for Civil Conspiracy

Plaintiff brings four claims for civil conspiracy: two against the County and Castillo for conspiring with each other to terminate Plaintiff's employment and to make a false accusation against her (Counts XI and XII) and two against the County, Castillo and EEOC Supervisor Defendant Byars for conspiring to "prevent Plaintiff authorization to file a Federal Discrimination Lawsuit against them…." (Counts XIII and XIV, emphasis in original).

I previously issued a Report and Recommendation explaining why the civil conspiracy claims against the County, Castillo and Byars fail as a matter of law (*see* ECF No. 112, at 9-12).[9] I incorporate that reasoning here and conclude that the Court should dismiss with prejudice Counts XIII and XIV.

Plaintiff also does not state a claim for civil conspiracy against the County and Castillo. Although not clear, it appears that Plaintiff alleges Castillo was an employee of the County. *See* (ECF No. 71 at ¶ 414) ("Defendant Castillo, along with Defendant MDC, reported to Defendant USSA that, as a Supervisor, this Plaintiff was derelict in her duties); (ECF NO. 95 at 15-16) (in sur-reply Plaintiff asks the Court "to infer that Defendant USSA was a part of the Conspiracy" because "once inferred by the Courts, proper elements will be met for the Count XI [and XII]…."). Castillo's apparent status as a County employee prevents Plaintiff from stating a claim for civil conspiracy, because of the intracorporate conspiracy doctrine.

---

[9] Judge Scola adopted this Report and Recommendation, and dismissed Plaintiff's claims against the EEOC Defendants, Byars and Dernick. (ECF No. 117).

The intracorporate conspiracy doctrine applies to both private corporations and public entities. *Dickerson v. Alachua County Com'n*, 200 F.3d 761, 767-68 (11th Cir. 2000); *Denney v. City of Albany*, 247 F.3d 1172, 1190 (11th Cir. 2001). "Under the intracorporate conspiracy doctrine, a corporation's employees, acting as agents of the corporation, are deemed incapable of conspiring among themselves or with the corporation. This doctrine stems from basic agency principles that attribute the acts of a corporation to the corporation, so that all of their acts are considered to be those of a single legal actor." *Dickerson*, 200 at 767 (citations and quotation marks omitted). "Simply put, under the doctrine, a corporation cannot conspire with its employees and its employees, when acting in the scope of their employment, cannot conspire among themselves." *Denney*, 247 F.3d at 1190 (quoting *McAndrew v. Lockheed Martin Corp.*, 206 F.3d 1031, 1036 (11th Cir. 2000) (*en banc*)).

Even if Plaintiff had named Defendant USSA in Counts XI and XII, as she asks the Court to infer, (ECF No. 95 at 15-16), she would still fail to state a cause of action. To state a claim for conspiracy to interfere with civil rights under 42 U.S.C. § 1985(3),[10] a plaintiff must plead four elements: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or

---

[10] Plaintiff erroneously relies upon a criminal statute, 18 U.S.C. § 241. (ECF No. 71 at pp. 61, 65). Given her *pro se* status, the Court will give Plaintiff the benefit of the doubt and construe her claim as arising under 42 U.S.C. § 1985.

privilege of a citizen of the United States." *Trawinski v. United Techs.,* 313 F.3d 1295, 1299 (11th Cir. 2002).

Plaintiff's claims are based upon conclusory allegations that lack factual support such as, for example, what overt acts the County and Castillo allegedly took in furtherance of the conspiracy. Plaintiff also fails to specifically allege that discriminatory animus "lay behind the conspirators' action," which is required to state a claim under § 1985(3), which is necessary to make out the second element of a section 1985(3) claim. *Barth v. McNeely*, 603 Fed. App'x 846, 850 (11th Cir. 2015). Instead, she vaguely alleges that the County and Castillo had "past practices of staging situations to fire black/females" which "caused Plaintiff to have anxiety [and] stress about if she would be the next one to be fired." (ECF No. 71 at ¶¶417, 433). This is insufficient. *See Jones v. CitiMortgage, Inc.*, 666 Fed. App'x 766, 773 (11th Cir. 2016) (Plaintiff failed to state a claim for relief under § 1985(3) because "[a]mong other problems, his allegations are insufficient to show the existence of a conspiracy that was premised on any racial or class-based animus.").

For the foregoing reasons, the Court concludes that Plaintiff has failed to state a claim for civil conspiracy against the County and Castillo and, therefore, Counts XI and XII should be dismissed without prejudice.

### E.     **Plaintiff Fails to State Against Castillo Under 42 U.S.C § 1983**

Count XVIII of the FAC is a claim against Castillo based upon 42 U.S.C. § 1983, that alleges that he violated Title VII, the Florida Civil Rights Act of 1992 ("FCRA") and the Florida Whistleblower Act, Fla. Stat. § 112.3187, by "ordering Defendant USSA" to: (i) assign Plaintiff "to the non-working golf cart" for three (3) days and (ii) permanently

reassign Plaintiff to the "special duty assignment." (ECF No. 71 at ¶¶ 543, 552, 560). To prevail on a claim under section 1983, a plaintiff must demonstrate that "(1) [the defendant] deprived her of a right secured by the Constitution or federal law and (2) that such deprivation occurred under color of state law."[11] *Charles v. Scarberry*, 340 Fed. App'x 597, 599 (11th Cir. 2009) (citation omitted). The only federal law that Plaintiff relies upon is Title VII, but "an allegation of a Title VII violation cannot provide the sole basis for a section 1983 claim." *Id.* at 600 (citation omitted). Plaintiff's reliance on the FCRA and Florida's Whistleblower Act is insufficient because those are state laws.

Given that Plaintiff cannot rely on Title VII, her section 1983 claim must be based on an alleged violation of an underlying constitutional right, such as the Equal Protection Clause of the Fourteenth Amendment. *See Cook v. Sheriff of Monroe County*, 402 F.3d 1092, 1115 (11th Cir. 2005) ("A § 1983 claim is predicated on an alleged violation of an underlying constitutional right."); *Williams v. Consolidated City of Jacksonville*, 341 F.3d 1261, 1268 (11th Cir. 2003) ("The Equal Protection Clause ensures a right to be free from intentional discrimination based upon race and gender.") (citations omitted). However, Plaintiff makes no allegation that Castillo violated her rights under the Equal Protection

---

[11] Section 1983 states:

> Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State…, subjects, or causes to be subjected, any citizen of the United States…to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress….

42 U.S.C. § 1983.

Clause (or deprived her of any other constitutional right), which warrants dismissal of her claim.

Even if the Court were to construe her section 1983 claim as predicated upon an alleged equal protection violation, her claim still fails. "The analysis of disparate treatment claims brought under Section 1983 [based upon the Equal Protection Clause] apply the same standards of proof and analytical framework utilized in claims brought under Title VII where the claims rely upon the same facts." *Margolis v. Public Health Trust of Miami-Dade County*, 89 F.Supp.3d 1343, 1349 (S.D. Fla. 2015) (citations omitted). For the reasons discussed *supra*, Plaintiff has not sufficiently alleged that her temporary assignment to a broken golf cart and her permanent "special duty assignment" constitute adverse employment actions.

For the foregoing reasons, Plaintiff has failed to state a section 1983 claim, and Count XVIII should be dismissed without prejudice.

## III.    RECOMMENDATION

For the reasons set forth above, I **RESPECTFULLY RECOMMEND** that the Court: (1) **GRANT** Defendants' U.S. Security Associates, Inc.'s, Miami-Dade County, Florida Department of Transportation and Public Water/Safety and Security Department's and Pablo Castillo's Motion to Dismiss (ECF No. 75), (2) dismiss Counts I-XII and XVIII without prejudice, and (3) dismiss Counts XIII and XIV with prejudice.

**No later than seven (7) days from the date of this Report and Recommendation** the parties may file any written objections to this Report and Recommendation with the Honorable Robert N. Scola, Jr., who is obligated to make a *de novo* review of only those

factual findings and legal conclusions that are the subject of objections. Only those objected-to factual findings and legal conclusions may be reviewed on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985), *Henley v.* Johnson, 885 F.2d 790, 794 (11th Cir. 1989), 28 U.S.C. § 636(b)(1), 11th Cir. R. 3-1 (2016).

RESPECTFULLY SUBMITTED in chambers at Miami, Florida, this 4th day of March, 2020.

_____
CHRIS McALILEY
UNITED STATES MAGISTRATE JUDGE

cc:  The Honorable Robert N. Scola, Jr.
      Counsel of record
      Zonya A. Flemings, Plaintiff